# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STANLEY DATA, on behalf of himself, )
and all other plaintiffs similarly situated, )
known and unknown, )
                              )
             Plaintiff,            )         No. 1:13-CV-02794
                              )
    vs.                                  )
                              )
BRIDGESTONE RETAIL OPERATIONS, )
LLC, d/b/a FIRESTONE COMPLETE )
AUTO CARE, )
                              )
             Defendant.         )

## AFFIDAVIT OF JEFFREY MORGAN

I, Jeffrey Morgan, being first duly sworn, state as follows:

1.      I am employed by Bridgestone Retail Operations, LLC ("BSRO" or the "Company") as the Human Resources Manager for BSRO's Mid-West Zone. I have personal knowledge of the facts set forth in this Affidavit, and if called as a witness, would so testify.

2.      BSRO's Mid-West Zone is comprised of 10 districts, as well as the Chicago Region. BSRO's Chicago Region is comprised of 80 stores, including stores in Wheaton and Schaumburg, Illinois, at which Stanley Data formerly worked.

3.      I have been employed by BSRO since 1991. I worked as the Mid-West Zone Education Manager from January, 2008 through November, 2011, when I became the Mid-West Zone Human Resources Manager. In my current role, I am responsible for various personnel issues relating to Mid-West Zone employees and have knowledge concerning BSRO's personnel policies and procedures, as well as employee personnel records.

4.     On October 1, 1995, Bridgestone/Firestone, Inc. implemented an Employee Dispute Resolution Plan ("BFI EDR Plan") for all non-union employees of Bridgestone/Firestone, Inc. and its subsidiaries, including BSRO's predecessor company. The BFI EDR Plan provided an exclusive means for resolving covered employment-related claims.

5.     In July, 2003, BSRO, at the time named BFS Retail and Commercial Operations, LLC, implemented an updated Employee Dispute Resolution Plan for all non-union employees. The 2003 Employee Dispute Resolution Plan provided an exclusive means for resolving covered employment-related claims.

6.     Effective June 1, 2011, BSRO implemented an updated EDR Plan for all non-union employees ("EDR Plan"). A true and accurate copy of the EDR Plan booklet is attached as Exhibit 1. The updated EDR Plan provides an exclusive means for resolving employment-related legal claims filed between BSRO and its employees, including wage and hour claims.

7.     Since the implementation of the EDR Plan, BSRO has provided the EDR Plan booklet to all covered employees, including new hires, either in paper or electronic form.

8.     In 2011, new employees within BSRO's Chicago's Region went through an electronic on-boarding process when they began their employment. Through that process, BSRO provides to new employees a broad range of information about employment and benefits, including employment policies and agreements governing employment with BSRO.

9.     During the electronic on-boarding process, employees review and acknowledge employment-related policies and enter into employment-related agreements. In 2011, new employees within BSRO's Chicago Region received and electronically signed a New Employee Acknowledgement and Agreement to Employee Dispute Resolution Plan form, acknowledging that they had the opportunity to review the EDR Plan booklet, as well as their agreement to be

2

bound by the EDR Plan. In connection with the EDR plan acknowledgement and agreement process, employees were provided a link to allow them to review the full text of the EDR Plan booklet before recording their acceptance. Employees could also view and request a hard copy of the EDR Plan booklet from their Human Resources Manager.

10.    Mr. Data applied for a retail sales position with BSRO in 2011. A true and accurate copy of the employment application he signed on June 15, 2011 is attached as Exhibit 2. This application has been maintained by BSRO in the Chicago Region office with Mr. Data's personnel records.

11.    BSRO hired Mr. Data and he started working in a retail sales position at BSRO's Wheaton, Illinois store effective July 26, 2011.

12.    On July 29, 2011, Mr. Data completed BSRO's electronic on-boarding process. During this process, he reviewed various BSRO policies and procedures on a computer terminal at the store. At 8:40 a.m., Mr. Data electronically signed the New Employee Acknowledgement and Agreement to Employee Dispute Resolution Plan form, acknowledging that he had the opportunity to review the EDR Plan booklet, which was available to him at that time, as well as his agreement to be bound by the EDR Plan. A true and accurate copy of the computer record confirming Mr. Data's acknowledgement and agreement to the EDR Plan is attached as Exhibit 3. This record has been maintained by BSRO in its computer system, to which access is limited and controlled.

13.    Mr. Data was a covered employee under the EDR Plan throughout his employment with BSRO.

3

14.     BSRO provides new teammate orientation ("NTO") classes for new employees. During these NTO classes, employees receive information about BSRO policies and procedures. Mr. Data attended an NTO class beginning on August 8, 2011.

15.     BSRO's Employment Information for Associates handbook contains various policies and procedures applicable to BSRO employees. During NTO classes, BSRO discusses the Employment Information for Associates handbook. BSRO also provides copies of the handbook to new employees or identifies how they can access the handbook on BSRO's intranet system. A true and accurate copy of the section of the handbook relating to the EDR Plan is attached as Exhibit 4.

16.     Mr. Data worked as a retail sales associate throughout his employment with BSRO, at stores in Wheaton and Schaumburg, Illinois.

17.     Mr. Data's employment with BSRO terminated effective March 22, 2012.

18.     BFS Retail and Commercial Operations, LLC changed its name to Bridgestone Retail Operations, LLC effective January 1, 2009.

THIS CONCLUDES MY AFFIDAVIT.

_____
Jeffrey Morgan

SUBSCRIBED AND SWORN
to before me, a Notary Public,
this 2̲0̲ day of June, 2013.

_____
Notary Public

```
OFFICIAL SEAL
CYNTHIA E UPLEGGER
Notary Public - State of Illinois
My Commission Expires Aug 1, 2016
```

4

# EXHIBIT 1

# BRIDGESTONE RETAIL OPERATIONS, LLC
# EMPLOYEE DISPUTE RESOLUTION PLAN

**June 1, 2011**

THE EMPLOYEE DISPUTE RESOLUTION PLAN IS THE EXCLUSIVE MEANS OF RESOLVING EMPLOYMENT-RELATED DISPUTES. ALL PERSONS WHO APPLY FOR EMPLOYMENT, ACCEPT EMPLOYMENT, CONTINUE WORKING FOR, OR ACCEPT ANY PROMOTIONS, PAY INCREASES, BONUSES, OR ANY OTHER BENEFITS OF EMPLOYMENT FROM BRIDGESTONE RETAIL OPERATIONS, LLC AGREE TO RESOLVE ALL SUCH DISPUTES THROUGH THE MEDIATION AND BINDING ARBITRATION PROCESS DESCRIBED HEREIN INSTEAD OF THROUGH THE COURT SYSTEM.

# NEW EMPLOYEE
## ACKNOWLEDGEMENT AND AGREEMENT

I understand and agree that any employment-related legal dispute I may have with Bridgestone Retail Operations, LLC (the "Company") including, but not limited to, any dispute concerning my application for employment, my employment if I am hired, and the termination of my employment if I am hired, must be resolved exclusively through the Company's Employee Dispute Resolution Plan, hereafter referred to as "the EDR Plan." I therefore understand and agree that I must submit all disputes covered by the EDR Plan to mediation and, if necessary, to final and binding arbitration under the terms of the EDR Plan. I understand and agree that disputes covered by the EDR Plan include, but are not limited to, claims under federal, state or local civil rights statutes, laws, regulations or ordinances and federal, state, or local common law contract and tort claims.

I hereby waive any right that I may have to resolve disputes covered by the EDR Plan through any other means, except as set forth in the EDR Plan, including a court case and/or a jury trial.

I acknowledge that I have had an opportunity to review the booklet containing the EDR Plan, a copy of which I received before signing this Acknowledgement and Agreement. The EDR Plan fully defines the disputes that are covered, describes the procedures for mediation and arbitration, and sets forth the remedies I may obtain.

I understand and acknowledge that my agreement to be bound by the EDR Plan is made in exchange for the Company employing me and the Company's promise to mediate or arbitrate disputes covered by the EDR Plan, as fully described in the EDR Plan.

I understand and acknowledge that I will not be allowed to begin working until I have signed and dated this Acknowledgement and Agreement and that the Company is reasonably relying upon all of my representations and statements related to the EDR Plan in making its decision to employ me, and, but for those representations and statements, the Company would not choose to do so. I also understand that my employment with the Company will be at-will and that this Acknowledgment and Agreement does not affect my at-will employment status.

_____

Employee Signature

_____

Date

_____

Print Name

_____

Universal ID Number

## CURRENT EMPLOYEE
## ACKNOWLEDGEMENT

I hereby acknowledge my receipt of the Bridgestone Retail Operations, LLC Employee Dispute Resolution Plan, hereafter referred to as "the EDR Plan." I also acknowledge that I have had an opportunity to review the EDR Plan. I further acknowledge that the EDR Plan fully defines the disputes that are covered, describes the procedures for mediation and arbitration, and sets forth the remedies I may obtain.


_____                    _____
Employee Signature                                  Date



_____                    _____
Print Name                                          Universal ID Number

# TABLE OF CONTENTS

Summary Explanation of the
Bridgestone Retail Operations, LLC
Employee Dispute Resolution Plan

      Background

      Mediation

      Arbitration

      Conclusion

      Common Questions and Answers


The Bridgestone Retail Operations, LLC
Employee Dispute Resolution Plan


Sample Requests for Mediation and Arbitration

# SUMMARY EXPLANATION OF THE

# BRIDGESTONE RETAIL OPERATIONS, LLC

# EMPLOYEE DISPUTE RESOLUTION PLAN

# BACKGROUND

## The Old "Lose-Lose" Approach

People are different. At Bridgestone Retail Operations, LLC (the "Company"), we have thousands of employees who work together daily. The differences among the people in our workforce strengthen us as a Company. Each person brings a different perspective which is valuable to the Company's human profile.

Sometimes, our differences result in misunderstandings or disputes. Unresolved disputes lower the morale of individual employees and weaken the Company. Such disputes can also be time-consuming and costly, particularly when they result in lawsuits.

Many employees who have brought lawsuits have been disappointed with the results. After long delays, years of worry and interrupted careers, much of what they recover, if anything, has gone to their attorneys. The Company has not fared any better with this type of litigation. In these cases, which have involved relatively few employees, the Company has paid out much more in legal fees than in judgments or settlements. This time and money could have been put to better use by both parties.

## The Progressive "Win-Win" Approach

The Company is one of many businesses that have been using a more effective method for resolving workplace disputes - one that benefits everyone.

This approach is called the "Bridgestone Retail Operations, LLC Employee Dispute Resolution Plan" ("the EDR Plan"). Resolution of disputes occurs much more promptly and entails minimal expense. Instead of juries, courts or administrative bodies, the EDR Plan uses mediation and arbitration, provided through the American Arbitration Association ("AAA") to resolve workplace disputes that have not been resolved internally. The AAA is a public service organization that offers a wide range of dispute resolution services to private individuals, businesses, associations and all levels of government. It handles approximately 60,000 cases each year and has access to over 50,000 neutral experts who hear and decide cases.

Mediation and arbitration are designed to:

- Provide a quick and fair resolution of your legal dispute.

- Protect your work relationships instead of disrupting them.

- Prevent excessive spending on attorneys' fees.

i

Mediation and arbitration under the EDR Plan are external means of resolving disputes. Naturally, the goal of both you and the Company should be to resolve any disputes internally. If you have a dispute, you should first talk to your manager or supervisor. If, for any reason, you are unable or unwilling to talk to your manager or supervisor, you should bring the dispute to the attention of another member of management or your Human Resources ("HR") representative who is trained to deal with employment-related problems. If you are uncomfortable or dissatisfied with this approach to resolving a problem, you may also call the Company's Compliance Hotline at 1-800-750-4975. These calls will be routed to the appropriate person.

If you cannot resolve a dispute covered by the EDR Plan through any of the foregoing internal means, you may utilize the external processes of mediation and arbitration provided by the EDR Plan.

## MEDIATION

The first step under the EDR Plan is mediation. For many people, just presenting their case to someone outside the Company who has no involvement with their problems is all that is needed to break a stalemate.

### What is Mediation

Mediation is often the most straightforward and cost-effective method of resolving disputes. It involves a meeting in which a neutral person, called a mediator, helps you and the Company work together to come to an agreement. The most important thing that mediation does is open up lines of communication so that people can consider different options.

Mediation is a non-binding process. That means that no one is required to agree. The mediator will make suggestions along the way, but you and the Company are ultimately responsible for resolving your dispute. All mediations under the EDR Plan will use an AAA mediator as the neutral third-party. Each mediator will have received special training and will be experienced in resolving disputes through mediation.

### Requesting Mediation

To initiate mediation proceedings, you must file a written Request for Mediation with the AAA. **The Request for Mediation must be filed within ninety (90) days of the event giving rise to the dispute or before the expiration of the applicable statute of limitations, whichever is longer.** A Request for Mediation can be obtained from the AAA by writing them at 13455 Noel Road, Suite 1750, Dallas, TX 75240, or by telephoning them at 800-426-8792. (A sample copy is

also included at the end of this booklet.) The written Request for Mediation must be accompanied by a $100 processing fee. The Company will participate with you in the mediation process and will pay all additional administrative costs, including the costs of the mediator. If you choose to be represented by an attorney, you will be responsible for your own attorneys' fees.

**Typical Mediation Steps**

When you submit a Request for Mediation, the AAA will assign a professional mediator who will meet with you and a Company representative to help work out your differences. If you are represented by an attorney, your attorney can also participate in the mediation. The mediator may first meet privately with you and then with a Company representative to try to develop a better understanding of the problem and help the parties solve it.

**Key Advantages of Mediation**

Because mediation has proven highly successful, it is generally the outside resolution method of choice. Mediation has many advantages. For example, it:

- Allows you to explain your opinion, belief, or feeling.
- Gives you a neutral person's perspective.
- Helps to reduce feelings of hostility.
- Helps to separate emotional issues from factual issues.
- Promotes discussion of creative solutions.
- Helps people work through their problems.

Sometimes, the simple process of being required to sit down and discuss a dispute allows the parties to find a solution to it.

If the dispute cannot be resolved by mediation, you may wish to take your dispute to arbitration for a final and binding decision. The arbitration process is described below.

# ARBITRATION

If the dispute is covered by the EDR Plan and is not resolved by mediation, you may request arbitration; you cannot utilize the arbitration process unless you have first gone through the mediation process outlined above. All arbitrators used to decide a claim under the EDR Plan will be provided through the AAA. Arbitrators will have received special training and will be experienced in resolving disputes through arbitration.

## What is Arbitration

Arbitration is a process in which a dispute is presented to a neutral third-party, the arbitrator, for a final and binding decision. The arbitrator makes this decision after both sides present their evidence and arguments at a hearing. There is no jury. The arbitrator has the same authority to award relief as a court of law or an administrative agency.

The AAA administers the arbitration proceedings, which are held privately. The AAA handles thousands of such cases each year. Though arbitration is less formal than a court trial, it is an orderly proceeding, governed by rules of procedure and legal standards of conduct.

## Requesting Arbitration

To initiate arbitration proceedings you must file a written Request for Arbitration with the AAA. **The Request for Arbitration must be filed within thirty (30) days from the date that the mediation process has been concluded, as defined in the EDR Plan.** A Request for Arbitration can be obtained from the AAA by writing them at 13455 Noel Road, Suite 1750, Dallas, TX 75240, or by telephoning them at 800-426-8792. (A sample copy is also included at the end of this booklet.) The Company will participate with you in the arbitration process and will pay the administrative costs, including the costs of the arbitrator. If you choose to be represented by an attorney, you will be responsible for your own attorneys' fees.

## The Role of Attorneys

The Company has access to legal advice through its Law Department and outside attorneys. You may consult with an attorney or any other adviser of your choice at any time, although you are not required to hire an attorney in order to participate in arbitration.

**Typical Arbitration Steps**

In summary, the arbitration process generally includes the following steps:

1. A party files a written Request for Arbitration with the AAA after having gone through mediation.

2. Any other parties involved are notified.

3. The AAA selects an arbitrator, with input from the parties.

4. The AAA arranges a hearing date at a convenient location.

5. Before the hearing, documents and other information may be exchanged.

6. At the hearing, testimony is given and witnesses are questioned and cross-examined.

7. The arbitrator issues a final and binding award.

**Arbitration Makes Sense**

Arbitration makes sense for a number of reasons:

- Quick Resolution: You can expect a quick resolution of your dispute. A decision will usually be made within weeks or months. In contrast, many court cases take years to conclude.

- Independent Decision Maker: Everyone benefits from the objectivity and experience of an outside, neutral arbitrator.

- What You Can Achieve: Under the terms of the EDR Plan, an arbitrator can award you any relief that would be available from a court of law or an administrative agency.

- Preserve Work Relationships: A quick and impartial resolution through arbitration may interfere less with your job than engaging in years of costly, frustrating and time-consuming litigation.

## CONCLUSION

Legislatures and courts have encouraged the use of alternative forms of dispute resolution such as mediation and arbitration to settle disputes quickly, fairly and effectively. They recognize that the conventional court system is often slow, cumbersome and expensive.

The EDR Plan promotes fair treatment of employees. It makes it easier and faster to resolve employment-related disputes. It also saves all of us from the financial and emotional expense of a long court battle, which can weaken working relationships and careers. We all have an interest in quick resolution of disputes at a reasonable cost.

The foregoing information and the Common Questions and Answers that follow provide a Summary Explanation of the EDR Plan. Complete details of the EDR Plan are contained in the text of the plan itself, entitled "Bridgestone Retail Operations, LLC Employee Dispute Resolution Plan," which is included in this booklet. If there are any contradictions or discrepancies between the Summary Explanation and the EDR Plan, the provisions of the EDR Plan will govern.

## COMMON QUESTIONS AND ANSWERS

1.  Can I use the EDR Plan to solve any problems that occur at work?

    <u>Answer</u>: As it is currently designed, the outside resolution processes offered by the AAA (mediation and arbitration) can be used to resolve only "Disputes" as defined in the EDR Plan.

2.  What "Disputes" are covered by the EDR Plan?

    <u>Answer</u>: Disputes are legal claims recognized under federal, state or local law involving your application for employment with the Company, your employment with the Company, or the termination of your employment with the Company. These include such things as: discrimination based on age, sex, race, color, national origin, disability, or religion; sexual or other harassment; unlawful retaliation; workers' compensation retaliation; defamation; infliction of emotional distress; breach of contract; and other matters involving the terms and conditions of your employment or your application for or termination of employment.

    For a more detailed description of disputes covered by the EDR Plan, please see Section 2.D. of the EDR Plan itself, which is included in this booklet.

3.  Are both employees and the Company required to pursue their legal claims under the EDR Plan?

    <u>Answer</u>: Yes. Under the EDR Plan, both employees and the Company give up their right to a court case or jury trial as a means of resolving disputes covered by the EDR Plan.

4.  What is the difference between mediation and arbitration?

Answer: Mediation is a process in which the parties involved in a dispute try to settle it with the aid of a neutral third party, the mediator, who is skilled in this process. The mediator helps to open up lines of communication but does not make a final decision in favor of one of the parties. Mediation also is less formal than arbitration and court proceedings. In arbitration, a dispute is submitted to an outside neutral third party who makes a final and binding decision after hearing evidence and arguments. Arbitration is more formal than mediation and is conducted in a manner similar to court proceedings.

5.   Do I have to go through mediation before proceeding to arbitration?

Answer: Yes.

6.   How does arbitration differ from a court trial?

Answer: With arbitration, the decision is final and binding. Except under rare circumstances, it will not be reversed by subsequent proceedings. In conventional court proceedings, on the other hand, either party may appeal a decision, often with lengthy delays. The AAA arbitrators have many years of experience in the judicial process and some are retired judges. However, an arbitration proceeding is usually much more informal than a case heard in court. The proceeding is held in private offices instead of in a public courthouse. The biggest difference, however, lies in the reasonable cost of arbitration. Because arbitration is faster and less formal, it generally ends up costing everyone involved much less to resolve the case.

7.   What happens if I file a lawsuit against the Company that involves a dispute covered by the EDR Plan?

Answer: The Company will ask the court to dismiss the case and require the parties to proceed under the EDR Plan.

8.   Is there any limit on the amount of monetary damages that can be awarded through arbitration?

Answer: The EDR Plan does not impose a specific maximum award. An arbitrator has the same authority as a court or an administrative agency to award damages, but may only award damages to the extent allowed by the applicable law.

9.   What can I do to seek relief if I believe my legal rights have been violated?

Answer: You have several options:

(a)   You can talk to your manager or supervisor or to any other appropriate management employee. This "open door" policy has been the Company's practice for many years.

(b)    You can talk to your Human Resources representative.

(c)    If you feel uncomfortable with option (a) or (b), you can call the Company's toll-free number, 1-800-750-4975, to discuss your problem.

(d)    If you cannot resolve your dispute in any of these ways, you may request mediation through the AAA. If the matter is not resolved in mediation and you proceed to arbitration, the arbitrator will determine if a legal right has been violated and the amount of damages, if any, that should be awarded. You can obtain a Request for Mediation form or a Request for Arbitration form by writing to the AAA, 13455 Noel Road, Suite 1750, Dallas, TX 75240, or by telephoning them at 800-426-8792. (Sample copies are also included in this booklet.)

10.    Can I be represented by an attorney in either the mediation or the arbitration?

Answer: Yes. It is your choice. You may hire an attorney to represent you in either the mediation or the arbitration or both. However, you are not obligated to do so in order to participate. Any costs you incur for attorney fees are your responsibility.

11.    What happens if I am terminated or laid off by the Company? Does the EDR Plan still apply to me?

Answer: Yes. If you are terminated or laid off, you must still resolve all disputes covered by the EDR Plan through the EDR Plan. All options of the EDR Plan would be available to you.

12.    Does the EDR Plan cover disputes about on-the-job injuries or claims for unemployment benefits?

Answer: Claims for workers' compensation or unemployment compensation benefits will be handled as they traditionally have been handled, and not through the EDR Plan. However, an allegation that you have been retaliated against because you filed a workers' compensation claim would be covered by the EDR Plan.

13.    Does the EDR Plan cover disputes arising under employee benefit plans or pension plans?

Answer: You are not required to pursue under the EDR Plan disputes relating to benefits arising under any employee welfare benefit plan or pension plan sponsored, established or maintained by the Company. However, such disputes may be pursued under the EDR Plan if you and the Company voluntarily agree to do so in writing. You must exhaust all internal

administrative procedures and appeals under the applicable employee welfare benefit plan or pension plan before you initiate a proceeding under the EDR Plan.

14. How are class actions, collective actions, and representative actions affected by the EDR Plan?

    Answer:  In the absence of the EDR Plan, you and the Company may otherwise have had a right or opportunity to pursue, participate in, or be represented in litigation filed in court as class actions, collective actions, or representative actions.  But under the EDR Plan, both employees and the Company give up their right to pursue, participate in, or be represented in class actions, collective actions, or representative actions in any forum, to the fullest extent permitted by law.

15. Are the Company's employees all over the world covered under the EDR Plan?

    Answer:  No.  Currently, the EDR Plan applies only to United States employees, meaning those employees who work in the United States or are under the jurisdiction of its court system.  In addition, persons who are hired into a unit of employees covered by a collective bargaining agreement in effect between the Company and a union are not covered by the EDR Plan.

16. Under the EDR Plan, can I still file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), a state or local civil rights agency or commission, or the National Labor Relations Board ("NLRB")?

    Answer:  It is the Company's hope that the EDR Plan will be so effective that you will not need to or want to go anywhere else.  You may, however, file a charge with the EEOC, a state or local civil rights agency or commission, or the NLRB.  However, if you file a lawsuit against the Company, individually or as a class or collective action, or if you attempt to pursue relief in your own name in a federal, state or local administrative agency proceeding (other than through a National Labor Relations Act charge), the Company will take steps to have your claims dismissed and decided under the EDR Plan.

17. What happens if my manager or supervisor starts to make things difficult for me after I contact the AAA?

    Answer:  The Company wants you to take full advantage of the EDR Plan.  The Company absolutely forbids retaliation against you for using it.  If you feel that someone is retaliating against you, you should immediately contact your Human Resources representative, who will help you handle this problem or refer you to someone who can.  Please remember that the Company wants to assure that your right to use the EDR Plan is safeguarded.

# BRIDGESTONE RETAIL OPERATIONS, LLC

# EMPLOYEE DISPUTE RESOLUTION PLAN

## BRIDGESTONE RETAIL OPERATIONS, LLC
## EMPLOYEE DISPUTE RESOLUTION PLAN

**Application for employment, initial employment, continued employment, or acceptance of any promotions, pay increases, bonuses, or any other benefits of employment on or after the effective date of the Bridgestone Retail Operations, LLC Employee Dispute Resolution Plan constitutes consent and agreement by both the Employee and the Company to be bound by the following terms.**

1.   **Purpose and Construction**

The Bridgestone Retail Operations, LLC Employee Dispute Resolution Plan ("the EDR Plan") is intended to facilitate the prompt, fair, and inexpensive resolution of legal disputes between the Company and its present and former Employees, and applicants for employment. The EDR Plan is intended to create an exclusive mechanism for the final resolution of all disputes falling within its terms. It is not intended to abridge or enlarge substantive legal rights except as expressly set forth herein. **The EDR Plan does not modify the "at-will" employment relationship between the Company and its Employees.** The EDR Plan should be interpreted in accordance with these purposes and objectives.

2.   **Definitions**

A.   "AAA" means the American Arbitration Association, the entity selected to administer the mediation and/or arbitration of disputes between an Employee and the Company pursuant to the EDR Plan, or its successor.

B.   The "Act" means the Federal Arbitration Act, 9 U.S.C. § 1, *et. seq.*

C.   "Company" means Bridgestone Retail Operations, LLC ("BSRO") including, but not limited to, Morgan Tire & Auto, LLC, Credit First National Association, and all entities having or having had any ownership interest in BSRO, or in which BSRO has or has had any ownership interest, and without limitation, all parent, subsidiary, sister, related or affiliate companies, or divisions of BSRO, and any and all partners, members, shareholders or owners thereof, together with the officers, managers, supervisors, employees and agents, whether in their official, corporate or individual capacities, of each and all of the foregoing entities, and their respective heirs, executors, personal representatives, administrators, predecessors, successors and

assigns. In the event an Employee and the Company agree, pursuant to Section 4.D. below, to pursue under the EDR Plan disputes relating to benefits arising under an employee welfare benefit plan or pension plan, the "Company" shall also include every plan of benefits, whether or not tax-exempt, sponsored, established or maintained by the Company, and the fiduciaries, agents and Employees of all such entities, as well as the successors and assigns of all persons and entities.

D.    "Dispute" means a legal claim between persons bound by the EDR Plan which relates to, arises from, concerns, or involves in any way:

1.    This EDR Plan;

2.    The employment of an Employee, including the application for and the initiation, terms, conditions, or termination of such employment;

3.    Any other matter arising from or concerning the employment relationship between the Employee and the Company including, by way of example and without limitation:

- Claims of discrimination or harassment on any basis, including race, color, national origin, ethnicity, religion, sex, age, handicap, disability or any other protected category or characteristic, arising under any federal, state or local constitution, statute, ordinance, regulation, order or common law, including Title VII of the Civil Rights Act of 1964, as amended, Section 1981, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Americans with Disabilities Act, and the Equal Pay Act;

- Compensation, bonus, and wage and hour claims under federal, state or local statutes, ordinances, regulations, orders or common law, including the Fair Labor Standards Act;

- Retaliation claims for whistle blowing or other legally protected activity, including workers' compensation retaliation;

- Claims relating to involuntary terminations, such as layoffs and discharges, including constructive discharges;

2

- Claims for breach of contract (expressed or implied) and/or promissory estoppel;

- Tort claims such as defamation, intentional or negligent infliction of emotional distress, assault, battery, conversion, invasion of privacy and other personal injury claims;

- Claims for alleged violations of public policy; and

- Claims for breach of fiduciary duty or breach of the duty of loyalty.

E. "EDR Plan" means The Bridgestone Retail Operations, LLC Employee Dispute Resolution Plan, as amended from time to time.

F. "Employee" means any applicant for employment, current employee or former employee of the Company residing in the United States, or otherwise subject to the applicable laws of the United States or any state, municipality, or other political subdivision; provided, however, that this EDR Plan shall not apply to any employee's Dispute which arose while such employee was employed in a unit of employees represented by a labor organization, or to the Company with respect to such employees, except to the extent that this EDR Plan is or may become a part of an applicable collective bargaining agreement.

G. "Party" or "Parties" means the Company and those Employees and persons defined in Section 4.A. of the EDR Plan.

H. "Sponsor" means Bridgestone Retail Operations, LLC.

## 3. Exclusive Remedy

The EDR Plan is the exclusive, final and binding means by which Disputes can be resolved. The only method by which a Party can seek relief in a court of law is in accordance with the provisions of the Act. Except as provided herein, the Parties shall have no right to litigate a Dispute in any other forum. Consequently, the institution of a proceeding under this EDR Plan shall be a condition precedent to the initiation of any legal action by an Employee against the Company and any such legal action shall be limited to those actions available under the Act.

4.  **Application and Coverage**

A.  The EDR Plan applies to and binds the Company, each Employee who is in the employment of the Company on or after the effective date of the EDR Plan, any applicant for employment who applied on or after the effective date of the EDR Plan, and the heirs, beneficiaries, successors, and assigns of any such persons. All such persons shall be deemed Parties to the EDR Plan. Provided, however, that the EDR Plan shall not apply to any Employee's Dispute which arose while such Employee was employed in a unit of Employees represented by a labor organization, or to the Company with respect to such Employees, except to the extent that the EDR Plan is or may become a part of an applicable collective bargaining agreement.

B.  Except as provided for herein, the EDR Plan applies to any Dispute between persons bound by the EDR Plan.

C.  Notwithstanding anything to the contrary in the EDR Plan, the EDR Plan does not apply to (i) Employees' claims for workers' compensation benefits or claims for unemployment compensation benefits; (ii) claims with respect to allegations of trade secret violations and breach of non-competition provisions and agreements; or (iii) claims under the National Labor Relations Act. Furthermore, nothing herein is intended or will operate to affect the exclusive remedies provided under applicable workers' compensation statutes.

D.  Notwithstanding anything to the contrary in the EDR Plan, Employees are not required to pursue under the EDR Plan Disputes which relate to, arise from, concern or involve employee benefits arising under any employee welfare benefit plan or pension plan sponsored, established or maintained by the Company. Such Disputes may be pursued under the EDR Plan if the Employee and the Company voluntarily agree to do so in writing. If the Employee and the Company so agree, then all provisions of the EDR Plan shall apply. The EDR Plan does not alter the terms, requirements or benefits, including any claims or internal appeals procedures, of any employee welfare benefit plan or pension plan sponsored, established or maintained by the Company.

E.  The Parties to the EDR Plan waive any right they may otherwise have to pursue, file, participate in, or be represented in Disputes brought in any court on a class basis or as a collective action or representative action. This waiver applies to any Disputes that are covered by the EDR Plan to the fullest extent such waiver is permitted by law. The

4

Parties do not waive any rights under the National Labor Relations Act, and employees retain their right to take any actions protected by the National Labor Relations Act.

F.    All Disputes subject to the EDR Plan must be mediated and arbitrated as individual claims. The EDR Plan specifically prohibits, to the fullest extent permitted by law, the mediation or arbitration of any Dispute on a class basis or as a collective action or representative action, and the arbitrator shall have no authority or jurisdiction to enter an award or otherwise provide relief on a class, collective or representative basis. The Parties to the EDR Plan, therefore, do not waive and specifically retain a right to appeal in a court of competent jurisdiction any determination or award of an arbitrator made in contravention of this section, including without limitation, a determination (i) that a claim may proceed as a class, collective, or representative action; or (ii) that awards relief on a class, collective, or representative basis. In such appeal, the standard of review to be applied to the arbitrator's decision shall be the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury.

## 5.    Mediation

A.    Before proceeding to binding arbitration, the Parties must first submit the Dispute to mediation, as set forth below.

B.    A Party must initiate proceedings by filing with the AAA a written Request for Mediation and by tendering the administrative fee required under Section 31 below. The Request for Mediation must be filed within ninety (90) days of the event giving rise to the Dispute or before the expiration of the applicable statute of limitations, whichever is longer. Failure of a Party to timely initiate mediation shall bar the Party from any relief or other proceedings under the EDR Plan or otherwise, and any such Dispute shall be deemed to have been finally and completely resolved.

C.    At the time that the Request for Mediation is filed with the AAA, the initiating Party shall also serve a copy of it on the Company at the address shown on the Request for Mediation or on the Employee at his/her address of record with the Company, as the case may be. At a minimum, the Request for Mediation shall describe the nature of the Dispute, the monetary amount involved, if any, and the remedy sought.

5

D.   The AAA shall review the Request for Mediation and appoint a mediator who will schedule a mediation conference between the Parties. The AAA shall use its best efforts to appoint a mediator within thirty (30) days of the date it receives the Request for Mediation.

E.   No later than one week before the mediation conference, or on such other date as requested by the mediator or agreed to by the mediator and the Parties, the Parties may submit to the mediator concise written summaries of their positions together with any supporting documents. These position statements may include proposed solutions to the matters in controversy.

F.   The entire mediation process will be confidential. No record of the mediation conference will be made, except that the terms of any settlement reached during a conference shall be memorialized in writing. All statements, promises, offers, and opinions made during the mediation conference, whether oral or in writing, will be confidential and will not be subject to discovery or admissible for any purpose in arbitration or in any other legal proceedings involving the Parties, other than an action to enforce a settlement agreement. Evidence otherwise admissible or subject to discovery, however, will not be excluded from discovery or deemed inadmissible in evidence simply as a result of its having been referenced or used in the mediation process.

G.   Upon the occurrence of any of the following events, the mediation process shall be deemed to have been concluded: (i) the Dispute is resolved; or (ii) the mediator or either of the Parties determines that all settlement possibilities have been exhausted and there is no possibility of resolution at that time, and the Parties and the AAA are so notified in writing.

## 6.   Initiation of the Binding Arbitration Process

A.   A party must initiate any arbitration proceeding under the EDR Plan within thirty (30) days from the date that the mediation process has been concluded, as defined in Section 5.G.

B.   A Party must initiate arbitration proceedings by filing with the AAA a written Request for Arbitration.

C.  At the time that the Request for Arbitration is filed, the initiating Party also shall serve a copy of it on the Company at the address shown on the Request for Arbitration, or on the Employee at his/her address of record with the Company, as the case may be. At a minimum, the Request for Arbitration shall include the following information:

1.  A description of the Dispute in sufficient detail to advise the other Party of the nature of the Dispute;

2.  The date when the Dispute first arose;

3.  The names and work locations of any persons with knowledge of the Dispute; and

4.  The relief or remedy requested.

D.  Parties on whom notice is served shall answer in writing within thirty (30) days of receiving the Request for Arbitration.

E.  The Answer to the Request for Arbitration shall include the following information:

1.  A response, by admission or denial, to each allegation set forth in the Request for Arbitration;

2.  All affirmative defenses to the Dispute; and

3.  All Disputes in the nature of counterclaims that can be asserted against the other Party to the proceedings.

F.  The party to whom a counterclaim is directed shall file a written response to its allegations within thirty (30) days of receiving the counterclaim.

## 7.  Appointment of the Arbitrator

Immediately after receipt of the Request for Arbitration, the AAA shall implement the procedure for the selection of an arbitrator as set forth in its National Rules for the Resolution of Employment Disputes.

8. **Date, Time and Place of Hearings**

    A.    The arbitrator shall determine the location of the arbitration hearing.

    B.    The arbitrator shall set the date and time of the arbitration hearing. The date of the hearing shall be no later than 180 days after the date of the filing of the Answer to the Request for Arbitration, unless the Parties agree otherwise or the arbitrator determines that the hearing should be scheduled at a later date.

    C.    Notice of any arbitration hearing shall be given at least twenty-one (21) days in advance, unless the arbitrator determines, upon a showing of good cause, that a shorter time is necessary.

9. **Conferences**

The arbitrator may schedule and hold conferences for the discussion and determination of any pre-hearing matter or any matter which will expedite the hearing, including:

    A.    Clarification of issues;

    B.    Determination of preliminary issues, including summary determination of dispositive legal issues;

    C.    Discovery;

    D.    The time and location of hearings or conferences;

    E.    Interim legal or equitable relief authorized by applicable law;

    F.    Pre- or post-hearing memoranda;

    G.    Stipulations; or

    H.    Any other matter of substance or procedure.

10. **Mode of Conferences and Hearings**

In the discretion of the arbitrator or by agreement of the Parties, conferences and hearings may be conducted by telephone or by written submission, as well as in person.

11. **Procedure**

    A.    The arbitrator shall be the sole judge of the relevance, materiality and admissibility of evidence offered at the arbitration hearing.

    B.    The arbitrator shall determine the number of days required for the arbitration hearing.

    C.    In the absence of contrary legal authority, the Party who submitted the Request for Arbitration shall have the burden of proof on each element of the Dispute to the same extent as if the matter were pending in a United States District Court sitting at the place of the hearing. The answering Party shall have the burden of proving affirmative defenses and the elements of any counterclaims asserted to the same extent as if the matter were pending in a United States District Court sitting at the place of the hearing.

    D.    The Party with the burden of proof shall present its case-in-chief first. At the conclusion of that Party's case-in-chief, the other Party may submit a motion for a directed finding. If such a motion is denied, or if it is not dispositive of the entire Dispute, the other Party may present its case-in-chief. Parties may call witnesses on rebuttal following the completion of the other Party's case-in-chief.

    E.    The arbitrator may subpoena witnesses or documents at the request of a Party or on the arbitrator's own initiative.

    F.    The arbitrator may consider the evidence of witnesses by affidavit or deposition, but shall give evidence so presented only such weight as the arbitrator deems appropriate after consideration of any objection made to its admission.

    G.    The AAA's Expedited Procedures shall not apply to the EDR Plan unless the arbitrator and all Parties agree otherwise.

12. **Pre-Hearing Discovery and Motions**

    A.    On a schedule to be determined by the arbitrator, the Parties shall exchange the names and addresses of all witnesses, including experts, they intend to call, and shall produce all documents they intend to offer, at the arbitration hearing. The subject matter of each witness' expected testimony shall also be provided at the time the witness is identified.

B. The arbitrator shall have discretion to determine the form, amount and frequency of discovery, subject to the following conditions:

    1. The deposition of the Party who submitted the Request for Arbitration shall be allowed as a matter of right. One deposition of the answering Party also shall be allowed as a matter of right. Additional depositions may be taken if the Parties so agree or if the arbitrator determines, upon a showing of good cause, that additional depositions are necessary.

    2. Each Party may propound one set of no more than twenty-five (25) interrogatories, including subparts. Additional interrogatories may be propounded if the Parties so agree or if the arbitrator determines, upon a showing of good cause, that additional interrogatories are necessary.

C. Discovery, including document requests and requests for admissions, as well as the depositions and interrogatories permitted under Section 12.B. above, shall be conducted/propounded in accordance with the Federal Rules of Civil Procedure (excluding Rule 26(a)), subject to any restrictions imposed by the arbitrator or the EDR Plan.

D. All discovery must be completed no later than ninety (90) days after the filing of the Answer to the Request for Arbitration, unless the Parties agree otherwise or the arbitrator determines that discovery should continue beyond this date.

E. Either Party may file a motion for summary judgment. The arbitrator shall determine a briefing schedule, allowing for an opening brief, opposition brief and reply brief. The deadline for filing motions for summary judgment shall be after, but no more than thirty (30) days after, the close of discovery. Summary judgment motions must be filed, fully briefed and decided by the arbitrator no later than thirty (30) days before the date set for the arbitration hearing.

## 13. Representation

Any Party to either a mediation or an arbitration may be represented by an attorney.

14. **Attendance at Hearings**

The arbitrator shall maintain the privacy of the hearings to the extent permitted by law. The arbitrator shall order witnesses to be sequestered at the request of any Party. However, the following persons are exempt from any order of sequestration and may attend every stage of proceedings, regardless of their status as potential witnesses: the Party who submitted the Request for Arbitration, the answering Party, and the attorneys for any Party.

15. **Postponement**

The arbitrator, for good cause shown by a Party, or on agreement of the Parties, may postpone any hearing or conference. The pendency of court proceedings related to the same matter shall not automatically be considered good cause for postponement.

16. **Oaths**

Before proceeding with the first hearing, the arbitrator may take an oath of office and, if required by law, shall do so. The arbitrator shall require witnesses to testify under oath. Oaths shall be administered by the arbitrator or the court reporter, if one is present.

17. **Stenographic Record**

A record of the arbitration hearing may be made by audio or video taping or by stenographic transcription. The Party requesting the record shall assume all related costs. The other Party may order a copy of the record at its own expense. The Parties may also agree to split the costs of the record. Any record shall be made available to the arbitrator.

18. **Arbitration in the Absence of a Party**

The arbitrator may proceed in the absence of the Parties or their representatives who, after due notice, fail to be present or fail to obtain a postponement. An award shall not be made solely on the default of a Party. Rather, the arbitrator shall require any Party who is present to submit such evidence as the arbitrator may require for the making of an award.

19. **Post-Hearing Submissions**

All documentary or tangible evidence to be considered by the arbitrator shall be submitted at the arbitration hearing. The arbitrator shall permit the filing of post-hearing briefs at the request of any Party and shall determine the procedure and timing of such filings.

20. **Closing the Hearing**

When the arbitrator is satisfied that the record is complete, including the submission of any post-hearing briefs, the arbitrator shall declare the hearing closed.

21. **Waiver of Procedures**

Any Party who fails to object promptly in writing upon learning that any provision or requirement of the EDR Plan has not been complied with, shall be deemed to have waived the right to object.

22. **Service of Notices and Papers**

Any papers, notices, or process necessary or proper for the initiation or continuation of any proceeding under the EDR Plan (including the award of the arbitrator, for any court action in connection therewith, or for the entry of judgment on an award made under these procedures) shall be served on any Party by mail addressed to the Party or his/her representative at his/her last known address, or by personal service. The AAA, the Parties, and the arbitrator may also use facsimile transmission or other forms of electronic communication to give any notices or to effect service as required by these procedures, as allowed by the AAA and/or the arbitrator.

23. **Communications with the AAA**

Any Party may file a Request for Mediation or a Request for Arbitration, or otherwise communicate with the AAA, by contacting:

> American Arbitration Association
> 13455 Noel Road
> Suite 1750
> Dallas, TX 75240
> Telephone: 800-426-8792

24. **Communication with the Arbitrator**

There shall be no communication between the Parties and the arbitrator other than at any hearings or conferences. Any other oral or written communications from the Parties to the arbitrator shall be directed to the AAA (and copied to the other Parties) for transmission to the arbitrator, unless the Parties and the arbitrator agree otherwise.

25. **Time of Award**

Unless otherwise agreed by the Parties or specified by applicable law, the award shall be promptly made by the arbitrator no later than thirty (30) days from the date of the closing of the hearing or the final submission of post-hearing briefs, whichever is later.

26. **Form of Award**

The award shall be in writing and signed and dated by the arbitrator. The award shall contain findings of fact and conclusions of law, the rationale for any grant of monetary damages or other relief, and a brief discussion of applicable legal authorities considered in connection with the award. The arbitrator shall give signed copies of the award to all Parties.

27. **Modification of Award**

On order of a court of competent jurisdiction, or on agreement of the Parties, the arbitrator shall modify any award. The arbitrator may modify an award on the motion of a Party if the arbitrator finds that the award as rendered is ambiguous or defective in form, or if the award requires an illegal or impossible act. Except as provided in accordance with applicable law, these are the only circumstances under which an arbitrator may withdraw or modify an award.

28. **Damages and Relief**

Upon a finding that a Party has sustained its burden of proof on any Dispute, the arbitrator may award such monetary or injunctive relief as may be just and reasonable under applicable law. In awarding relief, however, the arbitrator shall abide by the EDR Plan and shall further adhere to the following conditions:

A.   The arbitrator may only award such monetary or other damages as are available under applicable law, and only to the extent such damages

13

would be available if the matter were pending in a United States District Court sitting at the place of the arbitration hearing.

B.   All Parties have a duty to mitigate their damages by all reasonable means. The arbitrator shall take a Party's failure to mitigate into account in granting any relief or remedies.

C.   The arbitrator may award any Party its reasonable attorneys' fees and costs only in accordance with applicable law.

## 29.   Scope of Arbitrator's Authority

The arbitrator's authority shall be limited to the resolution of Disputes between the Parties as defined in the EDR Plan. As such, the arbitrator shall be bound by and shall apply applicable substantive law as set forth in the EDR Plan. The arbitrator shall not have the authority to either abridge or enlarge substantive rights available under applicable law. The arbitrator may also grant emergency or temporary relief which is or would be authorized by applicable law.

## 30.   Judicial Proceedings and Exclusion of Liability

A.   Neither the AAA nor any arbitrator is a necessary Party in any judicial proceeding relating to proceedings under the EDR Plan.

B.   Neither the AAA nor any arbitrator shall be liable to any Party for any act or omission in connection with any proceeding within the scope of the EDR Plan.

C.   Any court with jurisdiction over the Parties may compel a Party to proceed under the EDR Plan at any place and may enforce any award made.

D.   Parties to the EDR Plan shall be deemed to have consented that judgment upon the award of the arbitrator may be entered and enforced in any federal or state court having jurisdiction over the Parties.

E.   Initiation of, participation in, or removal of a legal proceeding shall not constitute a waiver of the right to proceed under the EDR Plan.

31. **Fees and Expenses**

    A.    The expenses of witnesses shall be borne by the Party calling such witnesses, except as otherwise provided by applicable law or in the award of the arbitrator.

    B.    All attorneys' fees shall be borne by the Party incurring them, except as otherwise provided by applicable law or by the EDR Plan.

    C.    If proceedings are initiated by an Employee, the Employee shall be responsible for the payment of a $100 administrative fee payable to the AAA. The Company shall be responsible for any other AAA administrative fees and the fees and expenses of the mediator and/or arbitrator.

    D.    If proceedings are initiated by the Company, the Company shall be responsible for all AAA administrative fees and the fees and expenses of the mediator and/or arbitrator.

    E.    Each Party shall bear its own costs of discovery during the proceeding.

32. **Amendment and Termination**

The EDR Plan may be amended or terminated at any time. However, no amendment or termination shall apply to a Dispute of which Sponsor had actual notice, through the filing with the AAA of a Request for Mediation or a Request for Arbitration, on the date of amendment or termination. No amendment or termination shall be effective unless approved in writing by a Vice-President or higher official of the Company and until sixty (60) days after written notice of such amendment or termination is sent to the AAA and Employees as defined in Section 2.F. above.

33. **Applicable Law**

    A.    These proceedings and any judicial review of awards under these rules shall be governed by the Federal Arbitration Act, 9 U.S.C. §1, *et seq.*

    B.    Except where otherwise expressly provided in the EDR Plan, the arbitrator shall apply the substantive law, including the applicable choice-of-law rules, which would be applied by a United States District Court sitting at the place of the arbitration hearing.

C.    The Act shall apply to this EDR Plan and any proceedings under the EDR Plan, including any actions to compel, enforce, vacate or confirm proceedings, awards, orders of an arbitrator, or settlements under the EDR Plan.

D.    Other than as expressly provided herein, the substantive legal rights, remedies and defenses of all Parities are preserved. In the case of arbitration, the arbitrator shall have the authority to determine and implement the applicable law and to order any and all relief, legal or equitable, which a Party could obtain from a United States District Court sitting at the place of the arbitration hearing on the basis of the Dispute alleged.

E.    Other than as expressly provided herein, the EDR Plan shall not be construed to grant additional substantive legal or contractual rights, remedies or defenses which would not be available if the action were pending in a United States District Court sitting at the place of the arbitration hearing in the absence of the EDR Plan.

## 34. Administrative Proceedings

A.    Employees may file administrative charges with the Equal Employment Opportunity Commission, state or local civil rights agencies and commissions, or the National Labor Relations Board. However, Employees may not pursue relief in their own name in any federal, state or local administrative agency proceeding, except with respect to charges filed with the National Labor Relations Act. In all other respects, the EDR Plan shall apply to Disputes sought to be brought before any local, state or federal administrative body unless prohibited by the laws applicable to the interpretation or enforcement of the EDR Plan.

B.    Participation in any administrative proceeding by the Company shall not affect the applicability of the EDR Plan to any such Dispute, and the Company shall not be deemed to have waived its right to later compel mediation and arbitration of such a Dispute pursuant to the EDR Plan.

## 35. Severability

The terms of the EDR Plan are severable. The invalidity or unenforceability of any provision herein shall not affect the application of any other provision. Where possible, consistent with the purposes of the EDR Plan, any otherwise

invalid provision of the EDR Plan may be reformed and, as reformed, enforced. In the event that a court of competent jurisdiction determines that any provision of the EDR Plan is unenforceable or should be reformed, the Dispute shall then be resolved by the arbitrator under the EDR Plan consistent with such court's determination. Notwithstanding the foregoing, in the event a court of competent jurisdiction determines that the Parties' waiver of their right to file, participate in, or be represented in class actions, collective actions, or representative actions brought in court (as set forth in Section 4.E. above) is unenforceable, then that waiver shall be severed, and the Parties may pursue, participate in, or be represented in class actions, collective actions, or representative actions in court as though such waiver did not exist and notwithstanding that the claims, if brought on an individual basis, would otherwise be subject to the EDR Plan. Under no circumstances may the EDR Plan be construed or reformed to permit class actions, collective actions, or representative actions to proceed under the EDR Plan.

SAMPLE REQUEST FOR MEDIATION

AND

SAMPLE REQUEST FOR ARBITRATION

AMERICAN ARBITRATION ASSOCIATION

## REQUEST FOR MEDIATION

**PLEASE NOTE: YOU MUST FILE THIS REQUEST FOR MEDIATION WITHIN NINETY (90) DAYS OF THE EVENT THAT GAVE RISE TO THE DISPUTE OR BEFORE THE EXPIRATION OF THE APPLICABLE STATUTE OF LIMITATIONS, WHICHEVER IS LONGER.**

I am submitting the following Dispute for MEDIATION under the Bridgestone Retail Operations, LLC Employee Dispute Resolution Plan:

My name (please print): _____

My current or last work address: _____
City, state and zip code: _____
Work telephone no.: _____

My home address: _____
City, state, and zip code: _____
Home telephone no.: _____

Description of my legal claim (attach additional pages if necessary):

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**(COMPLETE AND SIGN REVERSE SIDE ALSO)**

The incident(s) I am complaining about occurred on the following dates(s):

_____

I request the following remedies (include any specific monetary amounts):

_____
_____
_____
_____
_____
_____

Names and work locations of other persons with knowledge of my claim:

_____
_____
_____

*To initiate Mediation proceedings,* submit this Request along with the $100 administrative fee to:

> The American Arbitration Association
> 13455 Noel Road
> Suite 1750
> Dallas, TX 75240
> Telephone: 800-426-8792

A copy of this Mediation Request must also be mailed to:

> Bridgestone Retail Operations, LLC
> Law Department
> ATTN: EDR Plan Representative
> 333 E. Lake Street
> Bloomingdale, IL 60108

Signature: _____   Date: _____

Bridgestone Retail Operations, LLC's Employee Dispute Resolution Plan is administered by the American Arbitration Association.

AMERICAN ARBITRATION ASSOCIATION

## REQUEST FOR ARBITRATION

**PLEASE NOTE: YOU MUST FILE THIS REQUEST FOR ARBITRATION WITHIN THIRTY (30) DAYS OF THE DATE ON WHICH MEDIATION OF YOUR DISPUTE WAS CONCLUDED.**

I am submitting the following Dispute for ARBITRATION under the Bridgestone Retail Operations, LLC Employee Dispute Resolution Plan:

DATE MEDIATION OF THIS DISPUTE WAS COMPLETED: _____

My name (please print): _____

My current or last work address: _____
City, state and zip code: _____
Work telephone no.: _____

My home address: _____
City, state, and zip code: _____
Home telephone no.: _____

Description of my legal claim (attach additional pages if necessary):

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**(COMPLETE AND SIGN REVERSE SIDE ALSO)**

The incident(s) I am complaining about occurred on the following dates(s):

_____

I request the following remedies (include any specific monetary amounts):

_____
_____
_____
_____
_____
_____

Names and work locations of other persons with knowledge of my claim:

_____
_____
_____

*To initiate Arbitration proceedings,* submit this Request to:

                    The American Arbitration Association
                    13455 Noel Road
                    Suite 1750
                    Dallas, TX 75240
                    Telephone: 800-426-8792

A copy of this Request for Arbitration must also be mailed to:

                    Bridgestone Retail Operations, LLC
                    Law Department
                    ATTN: EDR Plan Representative
                    333 E. Lake Street
                    Bloomingdale, IL 60108

Signature: _____  Date: _____

# EXHIBIT 2

## Bridgestone Retail Operations, LLC (BSRO)

Please complete this form in your own handwriting, in ink. Disabled applicants may request accommodation, if necessary.   Date: 04/15/11

NAME (LAST, FIRST, MIDDLE): Date, Stanley W

ADDRESS (NUMBER, STREET, CITY, STATE, ZIP): 380 Glenwood Dr., Apt 201, Bloomingdale, IL, 60108

HOME PHONE (with area code): 217-413-7516     CELL PHONE (with area code): _____

EMAIL ADDRESS: smenx3@gmail.com

ARE YOU 18 YEARS OF AGE OR OLDER? Yes

POSITION DESIRED: Sales Associate     SALARY REQUIRMENT: _____

If position applied for requires operation of a motor vehicle, do you have a valid drivers' license?   ☒ Yes   ☐ No

If offered employment when could you be employed? ASAP

Do you have the legal right to employment in the United States? ☒ Yes ☐ No

Can you perform the essential functions of the job you are applying for with or without reasonable accommodation? ☒ Yes ☐ No

Can you work overtime? ☒ Yes ☐ No

**If you answer yes to any of the following, please explain below.**

Have you ever worked for BSRO or its subsidiaries? ☐ Yes ☒ No

Have you ever been discharged or asked to resign from a job? ☐ Yes ☒ No

Other than minor traffic offenses, have you ever been convicted of a crime that is reportable under Federal and/or State Law?
☐ Yes   ☒ No

Note: A conviction record will not necessarily bar you from employment. If YES, describe in detail below including date and location of offense.
All Applicants: Please see Company representative if you have questions regarding "reportable" crimes.
Illinois Applicants: under Illinois Public Act 93-0211, you are not required to disclose sealed or expunged records.
Massachusetts Applicants:  An applicant for employment with a sealed record on file with the commissioner of probation may answer "no record" with respect to an inquiry herein relative to prior arrests, criminal court appearances or convictions. An applicant for employment with a sealed record on file with the commissioner of probation may answer "no record" on an inquiry herein relative to prior arrests or criminal court appearances. In addition, any applicant for employment may answer "no record" with respect to an enquiry relative to prior arrests, court appearances and adjudications in all cases of delinquency or as a child in need of services which did not result in a compliant transferred to the superior court for criminal prosecution.

Explain: _____

EMPLOYMENT HISTORY (LIST ALL EMPLOYMENT, INCLUDING MILITARY SERVICE, BEGINNING WITH CURRENT/LAST POSITION.

| EMPLOYER (NAME, ADDRESS & PHONE NUMBER) | POSITION HELD | DATES | SALARY | SUPERVISOR | REASON FOR LEAVING |
|---|---|---|---|---|---|
| Best Buy, Bloomington IL | Sales Associate | FROM 8/10 TO 5/11 | 9/HR | Brian Plath | Moved |
| DESCRIBE WORK: Sold Products and Services and Schedules by getting to know customers and helping them find their needs | | | | | |
| SCKwhich, Normal, IL | Wireless Sales Associate | FROM 3/09 TO 9/09 | 9/HR | Chad | Business Closed |
| DESCRIBE WORK: Sold Cell phones and plans, services by getting to know customers. | | | | | |
| The Home Depot, Normal IL | Sales Specialist | FROM 7/08 TO 3/09 | 9/HR | Credit Trebiani | Changed Banking |
| DESCRIBE WORK: Explain flooring products services, and installation | | | | | |
| Lowes, Champaign IL | Head Cashier | FROM 9/05 TO 7/08 | 10/HR | Skylar Pahl | Transferred School |
| DESCRIBE WORK: Managed front end activity, reported to AM End Flows, greeted and acknowledged customers | | | | | |

MAY WE CONTACT YOUR CURRENT EMPLOYER?   ☒ YES   ☐ NO

| SCHOOL | NAME OF SCHOOL CITY & STATE WHERE LOCATED | DEGREE RECEIVED | DID YOU GRADUATE? | DATE DEGREE RECEIVED? | MAJOR & MINOR FIELD OF STUDY |
|---|---|---|---|---|---|
| HIGH SCHOOL | Milford High Milford, IL | | | LEAVE BLANK | General |
| COLLEGE | Parkland College Champaign, IL | X | | 08/08 | Criminal Justice Sociology |
| COLLEGE | Illinois State, Normal IL | | | 05/10 | Criminal Justice Sociology |
| OTHER | | | | | |

*REFERENCES (List references other than former supervisors or relatives)*

| NAME | EMPLOYER/TITLE | RELATIONSHIP | YEARS KNOWN | CONTACT INFORMATION (INCLUDE AREA CODE) |
|---|---|---|---|---|
| Mike Steeb | The Home Depot Departments Manager | Friend | 3 | Daytime Phone: 847-306-7199 Evening/Cell: Email: |
| Mark Wachter | Lake County Police | Friend | 3 | Daytime Phone: 091-220-988 Evening/Cell: Email: |
| Lindsey Bates | State Farm PandC Specialist | Friend | 2 | Daytime Phone: 815-833-5936 Evening/Cell: Email: |

*SKILLS, CERTIFICATIONS, LICENSES, FOREIGN LANGUAGES, ETC.*

LIST ANY OF THE ABOVE YOU HAVE THAT MAY QUALIFY YOU FOR THE POSITION DESIRED:

EXPLAIN YOUR GOALS; WHY YOU QUALIFY FOR THE POSITION DESIRED; WHY YOU WOULD BE SUCCESSFUL:

I am looking to start a career and move up to management. I have a strong customer service background with face to face customer interaction. I am successful in sales and have consistently met my sales goals in previous positions.

It is the policy of BSRO that applicants for employment are recruited and employed on the basis of individual merit and ability with respect to positions being filled and potential for promotions or transfers which may be expected to develop. Applicants are to be recruited and employed without discrimination because of race, color, religion, sex, age, national origin, disability, sexual orientation or other protected status in accordance with applicable local, state or federal law.

In addition, personnel procedures and practices with regard to training, promotion, transfer, compensation, demotion, lay off, or termination are to be administered without discrimination because of race, color, religion, sex, age, national origin, disability, sexual orientation, or other protected status in accordance with applicable local, state or federal law.

The company also is subject to Section 503 of the Rehabilitation Act of 1973 as amended and Section 38 U.S.C. 4212 of the Vietnam Era Veteran's Readjustment Assistance Act of 1974 which respectively require that the company take Affirmative Action to employ and advance in employment qualified individuals with disabilities and qualified Vietnam Era veterans, qualified special disabled veterans, and other veterans who served on active duty during a war or in a campaign expedition for which a campaign badge has been authorized.

Employment will be contingent upon the satisfactory completion of a physical examination. This examination will include a drug and/or alcohol screening test.

Exempt level employment may be contingent upon the signing of the Company's standard employment agreement form. If you would like to review the agreement at this time, please ask.

Information obtained concerning individuals shall be kept confidential, except when necessary for managerial decisions, for first aid and safety, and for government officials investigating compliance with the acts.

**Agreements and Acknowledgements by Applicant**

I certify that all the information contained in this application is true, complete and correct to the best of my knowledge; I understand that any material omission, misrepresentation, or falsification of this information is grounds for dismissal from or refusal of employment. I hereby authorize investigation of all statements contained in this application.

I authorize the employment references and educational institutions listed above to give you any and all information concerning my previous employment and education and any pertinent information they may have, personal or otherwise, and I release all parties from all liability for any damage that may result from furnishing my information to you.

If I am employed and the employment later terminates with my owning money to BSRO for any reason, I agree that any such amounts may be deducted from any monies due me at the time of termination as may be permitted under the law.

BSRO maintains a program that directs any legal disputes relating to the application form, initiations, terms, conditions or termination of employment to mediation and binding arbitration. The purpose of this program, called the Employee Dispute Resolution Plan ("Plan"), is to resolve legal disputes fairly, quickly and without burdensome expense to any of the parties involved. As a condition of BSRO's consideration of my application for employment, I agree that I will be bound by the terms of the Plan. Accordingly, I agree that any legal dispute as defined in the Plan that may arise out of the Company's considering me for employment or, in the event I am employed, any part of my employment or the termination of my employment will be subject to the mandatory mediation and binding arbitration provisions of the Plan.

I understand that I am not waiving my right to file a charge of discrimination with the Equal Employment Opportunity Commission or a state or local government agency. I also understand, however that I am waiving my right to file a lawsuit in a federal or state court or to purse relief in my own name in a state or local administrative proceeding. I further understand that if I violate this agreement, BSRO will request that my claims be dismissed that I be ordered to take legal action only under the Plan.

I acknowledge that I have been given the opportunity to review the Plan itself. I understand that I need to review the Plan carefully because it identifies the types of legal disputes covered and sets forth the procedures that must be followed.

If I am employed, I understand that the employment relationship will be **employment-at-will.** This means that both BSRO and I can terminate the relationship at any time without cause or notice. The employment relationship is not based upon an express or implied contract for any specified duration of the time. BSRO reserves the right to change methods or amounts of compensation and/or benefits as well as all other terms and conditions of employment. This employment-at-will relationship can only be altered by a writing executed by me and a BSRO employee holding a position of vice-president or higher.

_____                             06 | 15 | 11
SIGNATURE OF APPLICANT                                            DATE
I ACKNOWLEDGE IF I AM EMPLOYED THE AGREEMENTS AND ACKNOWLEDGEMENTS SHALL REMAIN BINDING.
THIS APPLICATION WILL BE EFFECTIVE FOR 60 DAYS FROM THE DATE SIGNED OR UNTIL THE POSITION IS FILLED, WHICHEVER DATE IS EARLIEST.
Employment Application Revised 05/01/09

CRIMINAL HISTORY

**STATE-SPECIFIC REQUIREMENT** – Applicants should thoroughly read and carefully follow the applicable state instructions before answering the criminal history question(s). NOTE: Every effort has been made to ensure the accuracy of this list, however, it is possible that interpretations and/or updates may have occurred, which are not reflected herein.

**California:** Applicants should not disclose marijuana convictions older than (2) two years for quantities of 28.5 grams or less (other than concentrated cannabis) per California Health & Safety Code §§11357(b) or (c), 11360(b) (formerly subdivision (c) of section 11360), 11364, 11365, or 11550. Applicants should not disclose convictions that have been sealed, expunged, or statutorily eradicated or any misdemeanor convictions for which probation has been successfully completed or otherwise discharged and the case has been judicially dismissed. Applicants should not disclose information regarding arrests or detentions for which a diversion program has been successfully completed. Cal. Code Regs., tit. 2, § 7287-.4. Applicants shall not disclose records of arrest, indictment, information, misdemeanor complaint, or conviction of a crime that, from the date of disposition, release, or parole, antedate the report by more than (7) seven years. Further, these items shall not be reported if in the case of a conviction a full pardon has been granted, or in the case of an arrest, indictment, information, or misdemeanor complaint a conviction did not result. Cal. Civ. Code §1785.13.6.

**Colorado:** Applicants should be aware that Consumer Reporting Agencies may only report those convictions which, from date of disposition, release, or parole, occurred within the past seven (7) years, unless the applicant's salary is or is reasonably expected to equal $75,000 or more. CRS §12-14.3-105.3(2)

**Connecticut:** Applicants are not required to disclose the existence of any arrest, criminal charge, or conviction, the records of which have been erased. Criminal records subject to erasure are records pertaining to a finding of delinquency or the fact that a child was a member of a family with service needs, an adjudication as a youthful offender, a criminal charge that has been dismissed or nolled (not prosecuted), a criminal charge for which the person was found not guilty, or a conviction for which the offender received an absolute pardon. Any person whose criminal records have been erased is deemed to have never been arrested within the meaning of the law as it applies to the particular proceedings that have been erased, and may so swear under oath. Conn. Gen. Stat. § 46-a-80(d).

**Delaware:** Applicants should be aware that summary offenses are not criminal convictions.

**District of Columbia:** Applicants should be aware that employers may obtain criminal history records only of convictions and forfeitures of collateral that have occurred within ten (10) years of the time that such record is requested.

**Georgia:** Applicants are not required to disclose information pertaining to any "first offender discharge." Ga. Code Ann. § 42-8-63.

**Hawaii:** Applicants should not answer this question unless a conditional offer of employment is received, at which time answer "Yes" only if the conviction is within the last ten (10) years. Haw. Rev. Stat. § 378-2.

**Illinois:** Applicants are not obligated to disclose sealed or expunged records of conviction or arrests. 20 Ill. Comp. Stat. §2630/12(a)

**Kansas:** Applicants should be aware Consumer Reporting Agencies may not report records of arrest, indictment, or conviction of crime, which from date of disposition, release, or parole, antedate the report by more than seven (7) years unless the applicant's salary is or is reasonably expected to equal $20,000 or more. Kansas Stat. §50-704

**Maryland:** Applicants should be aware that Consumer Reporting Agencies may not report records of arrest, indictment, or conviction of crime which, from date of disposition, release, or parole, antedate the report by more than seven (7) years. MCC § 14-1203. Applicants should be aware that an employer may not require or demand, as a condition of employment, prospective employment, or continued employment, that any individual submit to or take a lie detector or similar test. An employer who violates this law is guilty of a misdemeanor and subject to a fine not exceeding $100.

**Massachusetts:** Applicants should complete the attached state addendum.

**Minnesota:** Applicants should be aware that petty misdemeanors are not considered a crime and cannot be reported as a criminal conviction.

**Montana:** Applicants should be aware that Consumer Reporting Agencies may only report those convictions which, from date of disposition, release, or parole, antedate the application by more than seven (7) years. MCA §31-3-112

**Nevada:** Applicants should not disclose any criminal proceeding which antedates the application by more than seven (7) years. NRS598C.150

**New Hampshire:** Applicants should be aware that Consumer Reporting Agencies may not report records of arrest, indictment, or conviction of a crime, which from date of disposition, release, or parole, antedate the report by more than seven (7) years unless the applicant's salary is or is reasonably expected to equal $20,000 or more.

**New Mexico:** Applicants should not disclose arrests and indictments pending trial, or convictions of crimes, whose date of release or parole antedates the application by more than seven (7) years. NM Ch. 56 Art. 3 §6

**New York:** Applicants should be aware that Consumer Reporting Agencies may not report records of arrest, indictment, or conviction of crime, which from date of disposition, release, or parole, antedate the report by more than seven (7) years unless the applicant's salary is or is reasonably expected to equal $25,000 or more.

**Ohio:** Applicants should be aware that minor misdemeanors are not criminal convictions.

**Oregon:** Applicants should be aware that before requesting criminal offender information from the Department of State Police, the employer must advise the applicant that such information might be sought. OR Rev. Stat. §181.555

**Texas:** Applicants should be aware that Consumer Reporting Agencies may not report records of arrest, indictment, or conviction of a crime in which the date of disposition, release, or parole antedate the report by more than seven (7) years unless the applicant's salary is or is reasonably expected to equal $75,000 or more. TX Bus & Comm. Code Title 2 Ch. 20.05

**Washington:** Applicants should be aware that Consumer Reporting Agencies may not report records of arrest, indictment, or conviction of a crime in which the date of disposition, release, or parole antedate the report by more than seven (7) years unless the applicant's salary is or is reasonably expected to equal $20,000 or more. Wash. Rev. Code § 19.182.040(1) (e). Applicants should also be aware that employers may not inquire into conviction records that antedate the request by more than ten (10) years and only when the conviction reasonably relates to the applicant's fitness to properly perform the job for which the applicant is applying. Wash. Admin. Code § 162-12-140 c.

Have you been convicted of a crime? Have you received an alternative adjudication for which the deferral period, parole, probation, or court supervision ended within the past seven years? Do you have any open warrants or charges pending against you? In addition to the state limitations previously noted, do not include convictions or adjudications that were annulled, sealed, eradicated, expunged, pardoned, or dismissed. Conviction of a crime is not an absolute bar to employment. Factors such as the age of offense, evidence of rehabilitation, seriousness of violation, and job relatedness are considered in all employment decisions.

No , No , No
If you can answer "Yes" to any of the above (3) three questions, please select "Yes" below and complete the statement that follows.

If yes, please explain below the circumstances surrounding such offense, including place, date, court, etc.

I certify that I have read and understand the "Applicant Note" on Page 1 of this application and that the information furnished herein and during the application process is true, complete, and correct to the best of my knowledge. I understand that any misrepresentation or omission of facts will result in refusal to hire or, if hired, will result in my dismissal at any time regardless of when false answers or omissions are discovered. I further agree that if I am hired by the Company, I will be an at-will employee, which means that either the Company or I may end my employment at any time with or without cause or notice. I understand that if I am offered employment, I may be required to sign a non-solicitation and non-disclosure agreement as a condition of the employment. I understand that the Company may share the information contained in this application with other Company employees for employment and administrative purposes and hereby consent to such transfer. I hereby authorize the Company to conduct any necessary investigation regarding my background as it relates to the position I am seeking and to the extent permitted by federal, state, and local law. I agree to complete the requisite authorization forms for the background investigation. I agree to submit to legally permissible drug and/or alcohol testing upon request by the Company. I recognize that the results of these tests may be used to determine my employment or continued employment. I recognize that this employment application is not an offer of employment.

| APPLICANT'S SIGNATURE | DATE |
|---|---|
|  | 06/15/11 |

# EXHIBIT 3

   

**STANLEY DATA (10064471)**

BSRO Onboarding Stores (26538

Index | Forms | Acknowledgement | Government | Finalize

Acknowledgement -> New Teammate -> Bridgestone Retail Operations, LLC Employee Dispute Resolution Plan

**Bridgestone Retail Operations, LLC Employee Dispute Resolution Plan**

## NEW EMPLOYEE ACKNOWLEDGEMENT AND AGREEMENT
## TO EMPLOYEE DISPUTE RESOLUTION PLAN

I understand and agree that any employment-related legal dispute I may have with Bridgestone Retail Operations, LLC (the "Company") including, but not limited to, any dispute concerning my employment or the termination of my employment with the Company must be resolved exclusively through the Company's Employee Dispute Resolution Plan, hereafter referred to as "the EDR Plan." I therefore understand and agree that I must submit all disputes covered by the EDR Plan to mediation and, if necessary, to final and binding arbitration under the terms of the EDR Plan. I understand and agree that disputes covered by the EDR Plan include, but are not limited to, claims under federal, state or local civil rights statutes, laws, regulations or ordinances and federal, state or local common law contract and tort claims.

I acknowledge that I have had an opportunity to review the EDR Plan. (Click here for EDR Plan.)

I further understand and acknowledge that I may obtain another copy of the EDR Plan either from my Human Resources Manager.

I understand that by agreeing to be bound by the EDR Plan I waived any right I may have to resolve disputes covered by the Plan through any other means, except as set forth in the EDR Plan, including a court case and/or jury trial. I also understand that the EDR Plan fully defines the disputes that are covered, describes the procedures for mediation and arbitration, and sets forth the remedies I may obtain.

I understand and acknowledge that my agreement to be bound by the EDR Plan is made in exchange for the Company employing me and the Company's promise to mediate or arbitrate disputes covered by the EDR Plan, as fully described in the EDR Plan.

I understand and acknowledge that I will not be allowed to begin working unless and until I have clicked on the button below indicating once again that I understand and agree to be bound by the EDR Plan. I understand that the Company is reasonably relying upon all of my representations and statements related to the EDR Plan in making its decision to employ me, and, but for those representations and statements, the Company would not choose to do so. I also understand that my employment with the Company will be at-will and that this acknowledgment and Agreement does not affect my at-will employment status.

Completed: STANLEY DATA: 7/29/2011 8:40:11 AM

You can exit this application at any time and return to later to complete it. Your work is always saved when you have completed a step and you will not lose any work by exiting this application. To exit out of the application please close the internal browser by clicking on the red "X" located in the upper right hand corner. You can also select File/Exit or File/Close from the browser's toolbar menu in the upper left hand corner.

# EXHIBIT 4

# WELCOME TO
# BFS RETAIL & COMMERCIAL OPERATIONS, LLC
## (BFRC)

This communication provides general information about matters pertaining to your employment with BFRC. In reading it, remember that it is general in nature and does not contain complete details of each subject or address all policies affecting your employment. Additional details on policies and benefits related to your employment are contained in the *Manager's Guide to Teammate Relations Practices and Policies*, teammate benefits booklets, and, where applicable, the official Plan documents relating to those teammate benefits. If you have any questions regarding policies and benefits, contact your location manager, district office or the Zone Human Resource Manager. Since policies and benefits are subject to change between handbook printings, always consult your location manager, district office or the Zone Human Resource Manager to make certain that information is current.

> *The Company reserves the unilateral right to modify, alter, amend, change, discontinue, suspend, cancel or terminate at any time without written or verbal notice all or any part of the benefits or terms and conditions of employment described in this employment guide. Nothing contained herein is intended to, nor does it create any right to employment for any specific length of time. The employment relationship is terminable at will by either the Company or you. No oral or written representation made to an associate at the time of employment or during the course of employment in any way creates a right to any specific term or condition of employment unless reduced to writing and executed by a Company officer holding the position of Vice President or higher.*

Wages, terms and conditions of employment for teammate represented by a union will have those contained in the applicable collective bargaining agreement.

1

## Toll Free Action Line: (800) 750-4975

We strongly encourage you to follow the three steps described above in reporting any type of concern you may have. However, there may arise a situation in which you are uncomfortable raising certain serious matters to your direct supervisors. You may also decide that you would rather remain anonymous. BFRC has established the above toll-free number, available 24 hours a day, for any teammate to voice concerns regarding the following serious matters:

- Violations of health and safety
- Environmental law violations
- Thefts, bribes and kickbacks
- Disclosure or improper use of confidential or proprietary information
- Antitrust or anti-boycott violations
- Violations of export/import, foreign corrupt practices and lobbying an political contributions laws
- Consumer fraud
- Wage & Hour violations
- Harassment or discrimination
- Violations of internal controls
- Conflicts of interest
- Other criminal violations or violations of the *Guidelines for Business Conduct*

## The BFS Retail & Commercial Operations, LLC Employee Dispute Resolution Plan

Despite the best efforts of all of our teammates, disputes sometimes arise that are not resolved through the normal channels of communication. In the past, these unresolved disputes have occasionally resulted in litigation that only serves to lower the morale of teammates and weaken the company. Like all large employers, BFS Retail & Commercial Operations, LLC and many of its teammates have had to spend considerable time and money in lawsuits, which usually result in outcomes unfavorable to all the parties involved. BFRC is one of a growing number of employers who have established a program that directs legal disputes relating to the terms and conditions of employment to the alternative dispute resolution forums of mediation and arbitration. The purpose of this program, called *The BFS Retail & Commercial Operations, LLC Employee Dispute Resolution Plan*, (Plan), is to resolve legal disputes fairly, quickly and without burdensome expense to any of the parties involved. This Plan applies to all non-union teammates.

During your new hire orientation or when completing a new teammate packet, you received the booklet entitled *The BFS Retail & Commercial Operations, LLC Employee Dispute Resolution Plan* that contains the Plan and a Summary Explanation. Read this booklet carefully because it describes the details of the Plan and sets forth the types of claims covered by the Plan and the procedures you need to follow. By accepting or continuing your employment with BFS Retail & Commercial Operations, LLC, you have agreed to be bound to the terms of the Plan and, accordingly, you agree that any legal claims that you may have, you will submit to the Plan's mediation and arbitration procedures rather than to the courts or governmental agencies.

16

# Your Employment Relationship

## Your Employment is At Will

This means both you and the Company have the right to terminate the employment relationship at any time without prior notice or cause. Should you decide to resign your employment, we would appreciate reasonable notice. Two weeks is considered to be reasonable.

## Your Pay and Performance

The Company's pay practice depends on competitive reviews, teammate's skills and the Company's ability to pay. Establishing pay practices begins with a specification for each position. The job evaluation program is designed to measure the value of the position to the Company and its relationship to other positions within the organization. Most positions are assigned a salary range, which is reviewed periodically. Some positions are also eligible for bonuses based upon the then current terms and conditions of the bonus program.

Initial discussions with your supervisor will result in a definition of your job responsibilities and the establishment of performance objectives. Periodic performance appraisals and ongoing communications with your supervisor provide further opportunities for you to understand what is expected of you in your job and how your performance compares with your performance objectives, communication or pay should be directed to your location manager, district office or Zone Human Resource Manager.

## Education, Training and Instructional Programs

Properly educated teammates contribute to both their own and the company's success. We are committed to providing a climate in which teammates can achieve personal and professional growth and excellence. Sales management development and technician education programs play a major role in supporting this climate.

Programs are designed and developed by the Education department staff, incorporating information from internal and external sources. Programs, ranging in length from two hours to ten days, are conducted in a network of learning centers located throughout the country. Videos, on-line training, slide programs, self-study guides, reference manuals and job aids are also available. Special seminars and workshops are developed to support various marketing plans at local and national levels. See your location manager for the most current information.